Original

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KEVIN EARL WOOD,
      Plaintiff,

CASE NO: 5:03cv297-RH/WCS

v.

1. OFFICER NICHOLAS VANSTRANDER,
2. SERGEANT BRAD LEONARD,
3. LIEUTENANT RANDY SQUIRE,
4. CHIEF DAVID SLUSSER,
5. CITY OF PANAMA CITY,
      Defendants.
_____/

### VERIFIED COMPLAINT[1]

COMES NOW the Plaintiff, Kevin Earl Wood, pro se, and hereby files his VERIFIED COMPLAINT under oath:

#### I. PLAINTIFF

1. Plaintiff **KEVIN EARL WOOD** is a citizen of the United States residing at 6935 Wood Place, Panama City, Florida 32404, County of Bay, and is an adult over the age of eighteen (18).

#### II. DEFENDANTS

2. All Defendants are over the age of eighteen (18).

3. Defendant 1, **OFFICER NICHOLAS VANSTRANDER**, is a municipal police officer, is employed at the Panama City Police Department (PCPD) located at 1209 E. 15th St., Panama City, Florida 32401, and is sued in his individual and official capacity.

---

[1] This typed complaint is filed in substantial conformance with the CIVIL RIGHTS COMPLAINT FORM used by this Court for pro se non-prisoner litigants. U.S. Magistrate Casey Rodgers has ruled in another case that a typed Complaint may be filed in place of the form.

1

4. Defendant 2, **SERGEANT BRAD LEONARD**, is a municipal police officer, is employed at the Panama City Police Department located at 1209 E. 15th St., Panama City, Florida 32401, and is sued in his individual and official capacity.

5. Defendant 3, **RANDY SQUIRE**, is a municipal police officer, is employed at the Panama City Police Department located at 1209 E. 15th St., Panama City, Florida 32401, and is sued in his individual and official capacity.

6. Defendant 4, **DAVID SLUSSER**, is a municipal police officer, is employed at the Panama City Police Department located at 1209 E. 15th St., Panama City, Florida 32401, and is sued in his individual and official capacity.

7. Defendant 5, **CITY OF PANAMA CITY**, is a municipality organized under the laws of Florida located at 1209 E. 15th St., Panama City, Florida 32401.

8. At all times relevant to this complaint, all Defendants were acting under color of state law.

### III. STATEMENT OF FACTS

9. On or about November 27, 2002, Thanksgiving Eve, Plaintiff met with Defendants VanStrander and Leonard at a McDonald's restaurant located across from the Panama City Mall in Panama City, Florida at the request of Defendant VanStrander.

10. An automobile registered to Plaintiff's elderly mother[2] was allegedly involved in a hit-and-run accident involving property damage and Defendants VanStrander and Leonard wished to

---

[2] Plaintiff's mother is since deceased.

**2**

interview Plaintiff and his minor daughter to seek information on the alleged hit-and-run.

11. Plaintiff's minor daughter, a licensed operator in Florida, had the permission of her grandmother and Plaintiff to use the vehicle.

12. Because of prior false arrests of Plaintiff by PCPD officers and political conflicts involving PCPD, because Plaintiff wanted to accurately make a record of information related to the alleged hit-and-run situation, because Plaintiff's daughter was a minor child and possible suspect, and because Plaintiff wanted to protect himself and his daughter from later false allegations by PCPD officials, Plaintiff lawfully used a portable audio tape recorder to accurately record and document his and his daughter's interview with Defendants VanStrander and Leonard, and later with Defendant Squire.

13. It was later determined that Plaintiff's minor daughter was not involved in the alleged hit-and-run accident.

14. Defendants VanStrander and Leonard consented not only to the interception (acquisition) of their communications by Plaintiff, they also did not object to the recording.

15. The audio tape recording device was in plain sight of Defendants VanStrander, Leonard, and Squire at all times relevant to this complaint and Plaintiff was a party to the communications at all times.

16. However, after the conversation between Plaintiff, Defendant VanStrander, Defendant Leonard, and Plaintiff's minor

**3**

daughter had continued for a while, all the while being acquired and recorded with consent of all parties present, Defendant Squire arrived on the scene.

17. After Defendant Squire arrived at the scene he met with Defendants VanStrander and Leonard privately out of earshot of Plaintiff and his minor daughter and conspired and agreed with Defendants Leonard and VanStrander to deprive Plaintiff of his right to record the public lawfully acquired communications and to separate Plaintiff from his minor child of whom he had legal custody.

18. The three officers then approached Plaintiff and his daughter and Plaintiff was ordered to turn off the audio tape recorder.

19. Because Plaintiff was violating no federal or Florida law, and was merely exercising his First Amendment right to record what law enforcement officers do in the conduct of their public duties in a public place, under reasonable circumstances, Plaintiff declined to turn off the recording device.

20. Plaintiff was then handcuffed and arrested at McDonald's for refusing to obey the unlawful order to turn off the recording device on one count of intercepting (acquiring) an oral communication under Chapter 934, Florida Statutes.

21. Defendants VanStrander, Leonard, and Squire knew that Plaintiff's arrest was without probable cause and was in complete and deliberate indifference to Plaintiff's rights of which Defendants clearly knew of because of a standing policy and custom of deliberate indifference by Defendant City of Panama City and Defendant Slusser to the rights of Plaintiff and

4

other citizens to record such public or other lawfully acquired communications.

22. Defendants Panama City and Slusser had adopted and implemented a longstanding pattern and practice in Panama City since on or about 1993 of false arrests for merely and lawfully recording otherwise lawfully acquired communications with deliberate indifference to well-established state, federal, and even local circuit and county law.

23. Defendant Panama City's and Slusser's policy and custom of deliberate indifference to the rights of citizens in Panama City to record otherwise lawfully acquired communications contributed directly to Plaintiff's arrest on November 27, 2002 aggravated also by an established policy of retaliation against Plaintiff and oppression of Plaintiff's right, privileges, and immunities which policy and custom Defendants continued to fail and refuse to stop resulting in Plaintiff's arrest on November 27, 2002 and subsequent injuries to Plaintiff.

24. Plaintiff was particularly targeted by all Defendants because of his civil and constitutional rights activities, for being involved in exposing an illegal payoff scheme circa 1993, involving PCPD in at least one cocaine case, dubbed "Cash Register Justice" by the media, and for exposing illegal submerged state-owned submerged land use by Defendant Panama City officials and involving contractors involving cocaine smuggling, trafficking, gambling, and other illegal activities at the city marinas where Plaintiff's conduct resulted in substantial reform of the legal status of the marinas by state officials.

5

25. Plaintiff has been subjected to repeated false arrests by PCPD because of a policy of retaliation against Plaintiff by Defendants Panama City and Slusser and a policy to suppress Plaintiff's exercise of his constitutional and statutory rights, privileges, and immunities including Plaintiff's right to run for public office free of interference and damage to his reputation.

26. On or about April 16, 1999, Plaintiff was unlawfully detained without probable cause by PCPD, although not arrested, because Plaintiff was lawfully audio recording his public contacts with county contract probation officials at the county probation office because of public misconduct involving that office and a lack of a legitimate probation contract.

27. Plaintiff was released after about an hour without being charged for any offense, and particularly under Chapter 934, Florida Statutes, because PCPD officials recognized Plaintiff's right to acquire and record said public conversations with public contract officials performing a delegated government function.

28. On or about April 22, 1993, Plaintiff had also been falsely arrested before by PCPD for a two-count alleged violation of Chapter 934, Florida Statutes and a special prosecutor later appointed by former Governor Lawton Chiles dropped the charges after Plaintiff won on appeal to the First District Court of Appeal in Florida, but not until after Plaintiff had already suffered outrageously by spending nearly a month in jail and a year on house arrest before winning his appeal and the charges dropped.

29. On or about February 17, 2000, Panama City citizen Randy Fowler was falsely arrested at the direction of State Attorney Jim Appleman for recording his conversation with Mr. Appleman in the public lobby of the State Attorney's office.

30. On or about July 5, 2001, the Circuit Court in Bay County, the Hon. Don Sirmons, Circuit Judge, dismissed the charges against Mr. Fowler finding Mr. Fowler had a right to record his communication with State Attorney Appleman.

31. On or about August 6, 2002, shortly before Plaintiff's Thanksgiving arrest, Citizen Randy Fowler was again arrested, this time by PCPD, for recording his conversation with PCPD officers in a public place.

32. On or about September 19, 2002, the courts in Bay County again found Mr. Fowler had a right to record the conversation and again dismissed the charges.

33. In fact, a subordinate of Defendant Squire made the arrest of Mr. Fowler on August 6, 2002 so Defendant Squire, as a high-ranking superior Lieutenant instrumental in Plaintiff's Thanksgiving Eve arrest, was clearly aware of a citizen's lawful and constitutional right to record said conversations and Defendant Squire acted with complete indifference to Plaintiff's First Amendment and lawful right to record his own communications on November 27, 2002 with Defendant Squire's full knowledge of the deprivation of Plaintiff's rights.

34. Plaintiff repeatedly reminded Defendants VanStrander, Leonard, and Squire of the Fowler case, and other law, at McDonald's and VanStrander during Plaintiff's transport to the

Bay County jail but all officers ignored this information and failed to acknowledge the Fowler or other precedent.

35. Because of the above clear notice of lawful rights of citizens to record conversations, and established law, Defendants Squire, Leonard, and VanStrander had more than sufficient knowledge of Plaintiff's constitutional and statutory rights on November 27, 2002.

36. Defendants Squire and Leonard had adequate knowledge to prevent such deprivations of Plaintiff's rights and had the authority, in their on-sight supervisor capacity on November 27, 2002 over Defendant VanStrander, to prevent such deprivations and prevent Plaintiff's arrest but willfully and with malicious intent failed and refused to do so.

37. Plaintiff suffered extreme humiliation and embarrassment as a result of being arrested in front of his daughter and also patrons and employees of McDonald's restaurant.

38. Plaintiff was placed in the rear of Defendant VanStrander's vehicle in handcuffs and was transported to the Bay County Jail where Plaintiff spent Thanksgiving Eve and Thanksgiving morning behind bars.

39. Plaintiff was released after his first appearance hearing Thanksgiving morning on his own recognizance because the first appearance judge also questioned the validity of the charge against Plaintiff after hearing argument of the standby public defender who successfully represented another citizen, Randy Fowler, who was also falsely arrested for recording his conversation with State Attorney Jim Appleman.

40. Furthermore, while Plaintiff was handcuffed in the rear of the vehicle in the McDonald's parking lot, Plaintiff's minor daughter continued to be interrogated out of the presence her father violating her and her father's rights and causing an unlawful and unconstitutional separation between father and his minor daughter.

41. A week after Plaintiff's arrest, on or about December 4, 2002, State Attorney Jim Appleman, 14th Judicial Circuit, dropped the interception charge against Plaintiff because Plaintiff had committed no offense, was exercising his rights under the law and U.S. Constitution, and thereby state criminal proceedings were terminated in Plaintiff's favor.

### IV. STATEMENT OF CLAIMS

Count I - Deprivation Under Color of Law (42 U.S.C. 1983)

42. Plaintiff realleges all facts in all prior paragraphs.

43. Defendants have, under color of Florida law subjected Plaintiff to the repeated and continuing deprivation of rights, privileges, and immunities secured by the U.S. and Florida Constitutions and laws as a continuing violation since on or about 1993 through Plaintiff's arrest on November 27, 2002 through a pattern of bad faith false arrests or liberty restrictions of Plaintiff under Chapter 934, Florida Statutes.

44. Plaintiff has suffered repeated and continuing embarrassment, humiliation, and damage and injury to his personal and professional reputation and property interests as a result of the continuing and repeated illegal arrests, retaliation, and deprivations against him from 1993 to the through his arrest on November 27, 2002.

9

45. Defendants actions were deliberate, willful and malicious calculated to cause damage and injury to Plaintiff to suppress, oppress, or otherwise chill his exercise of federal and state rights, immunities and privileges in wanton disregard for Plaintiff's rights.

Count II - Conspiracy to Interfere with Civil Rights (42 U.S.C. 1985)

46. Plaintiff realleges all facts in all prior paragraphs.

47. Defendants Slusser and Panama City have, under color of Florida state laws, regulations, customs, policies, and practices, as a continuing violation/continuing offense, pattern, and practice since on or about 1993 to the present, agreed, had a meeting of the minds, or otherwise agreed and conspired to subject Plaintiff to the repeated and continuing deprivation of rights, privileges, and immunities secured by the U.S. and Florida Constitutions and laws.

48. Defendant Panama City has knowingly permitted continuing deprivations of Plaintiff's rights as a policy and custom of retaliation against Plaintiff demonstrated by Defendant Panama City failing to discipline its officers who have engaged in repeated illegal arrests and detentions of Plaintiff or to adequately train, advise, or otherwise control and prevent these continuing and relentless unlawful and unconstitutional retaliatory and oppressive acts against Plaintiff.

49. On November 27, 2002, Defendants Squire, Leonard, and VanStrander knowingly conspired and agreed to arrest Plaintiff to deprive Plaintiff of rights, privileges, and immunities secured by the U.S. and Florida Constitutions and laws.

50. Plaintiff has suffered repeated and continuing embarrassment, humiliation, and damage and injury to his personal and professional reputation and property interests as a result of the continuing and repeated false arrests by Defendants.

51. Defendants actions were deliberate, willful and malicious calculated to cause damage and injury to Plaintiff to suppress, oppress, or otherwise chill his exercise of federal and state rights, immunities and privileges in wanton disregard for Plaintiff's rights.

Count III -Action for Neglect to Prevent (42 U.S.C. 1986)

52. Plaintiff realleges all facts in all prior paragraphs.

53. Defendants Leonard and Squire had the power and ability as supervisors of Defendant VanStrander to stop and prevent the illegal actions against Plaintiff on November 27, 2002 but neglected their duty to do so.

54. Plaintiff has suffered embarrassment, humiliation, and damage and injury to his personal and professional reputation and property interests as a result of the failure of Defendants Leonard and Squire to stop the illegal arrest on November 27, 2002 by Defendant VanStrander.

55. Defendant Leonard's and Squire's actions on November 27, 2002 were willful and malicious calculated to cause damage and injury to Plaintiff to suppress and oppress Plaintiff's exercise of federal and state rights, immunities and privileges.

Count IV -State Claim - False Arrest

56. Plaintiff realleges all facts in all prior paragraphs.

57. On or about November 27, 2002, Thanksgiving Eve, Plaintiff was arrested and confined without probable cause as a result of the jointly conspired acts of Defendants VanStrander, Leonard, and Squire.

58. Plaintiff has suffered embarrassment, humiliation, and damage and injury to his personal and professional reputation and property interests as a result of his false arrest.

59. Defendant VanStrander's, Leonard's and Squire's actions on November 27, 2002 were willful and malicious calculated to cause damage and injury to Plaintiff to suppress and oppress his exercise of federal and state rights, immunities and privileges.

Count V -State Claim - False Imprisonment

60. Plaintiff realleges all facts in all prior paragraphs.

61. On or about November 27, 2002, Defendants VanStrander, Leonard, and Squire intentionally without authority to do so caused Plaintiff's confinement in handcuffs, in a police car, and in jail without Plaintiff's consent.

62. Plaintiff had no reasonable means of escape.

63. Plaintiff has suffered embarrassment, humiliation, and damage and injury to his personal and professional reputation and property interests as a result of his false arrest.

64. Defendant VanStrander's, Leonard's and Squire's actions on November 27, 2002 were willful and maliciously calculated to cause damage and injury to Plaintiff.

Count VI -State Claim - Malicious Prosecution

65. Plaintiff realleges all facts in all prior paragraphs.

66. On November 27, 2002, Defendants VanStrander, Leonard, and Squire intentionally, willfully and maliciously conspired to institute criminal proceedings in the Circuit Court, Bay County, Florida against Plaintiff by causing his arrest and detention in the Bay County Jail without probable cause or legal authority to do so.

67. Defendants' malice was based on their intent to retaliate against Plaintiff, to oppress Plaintiff's well established rights, and to separate a father from his minor daughter so that Plaintiff's daughter could be interrogated out the presence of her father and without her father's representation and consent.

68. The criminal proceedings terminated in Plaintiff's favor on or about December 4, 2002, when the state attorney dropped the charges due to lack of probable cause.

69. Plaintiff has suffered embarrassment, humiliation, damage and injury to his personal and professional reputation and property interests as a result of his false arrest.

70. Defendant VanStrander's, Leonard's and Squire's actions on November 27, 2002 were willful and malicious calculated to cause damage and injury to Plaintiff.

## V. RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Declare that Defendants' actions, individually and/or collectively, as set forth in the complaint violate federal law and the U.S. Constitution, including the **First Amendment** (right

to record otherwise lawfully acquired communications)³, **Fourth Amendment** (freedom from unreasonable searches and seizures without probable cause), **18 U.S.C. 2510 et seq.** (allowing the recording of otherwise lawfully acquired communications, if the recording is possible) as well as state law and the Florida Constitution, including **Article I, Section 12** (freedom from unreasonable searches and seizures without probable cause supported by affidavit), **Article I, Section 23** (right of privacy and to be let alone and be free from governmental intrusion), **Chapter 934 et seq.**, *Florida Statutes* (allowing the recording of otherwise lawfully acquired communications, if the recording is possible).

B.  Award Plaintiff such costs and fees as are allowed by law and/or 42 U.S.C. 1988.

C.  Award damages to Plaintiff including compensatory, general and/or punitive damages.

---

³ *See also* **Smith v. City of Cumming**, 212 F.3d 1332, 212 F.3d 1332 (11th Cir. 05/31/2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."); **United States v. Harpel**, 493 F.2d 346 (10th Cir. 03/12/1974) ("...the recording of a conversation is immaterial when the overhearing is itself legal. It is the means whereby the contents of the conversation are acquired that is crucial."); **Cogdill v. Commonwealth**, 247 S.E.2d 392, 219 Va. 272 (Va. 08/31/1978) [adopting **Harpel** and recognizing a clear distinction drawn between the act of "interception" (acquisition) and the act of "recording."]; **Royal Health Care Services, Inc. v. Jefferson-Pilot Life Insurance Co.**, 924 F.2d 215 (11th Cir. 02/21/1991) (adopting **Harpel** and recognizing that a recording device is not an "interception" device where the communication is otherwise lawfully acquired). *See* also Florida Statute 934.09(8)(a) clearly distinguishing between the act of "interception" (acquisition) and the act of "recording" as analyzed in **Harpel**, supra, and **Cogdil**, supra. See also Florida Statute 934.03 et seq. that only regulates or prohibits the initial act of "interception" (acquisition) without consent and does not regulate the act of any subsequent act of "recording" of otherwise lawfully "intercepted" (acquired) communications. All of the above law was established and in place at the time of Plaintiff's November 27, 2002 Thanksgiving Eve arrest but was ignored by Defendants.

14

D. Grant Plaintiff declaratory relief establishing his right as a Florida citizen and declaring his constitutional First Amendment and statutory right to record any communication to which he is a party and that is otherwise lawfully acquired under federal and Florida law.

E. Grant Plaintiff such other and further relief as the Court deems just and proper.

F. Provide for a jury trial on the matters alleged herein.

## VI. PREVIOUS LAWSUITS

Plaintiff has not initiated any other actions in state or federal court arising from the facts and issues involved in this action.

Respectfully submitted,

Kevin Earl Wood
*Pro Se*
**6935 Wood Place**
**Panama City, Florida 32404**
(850) 785-3768

**STATE OF FLORIDA**
**COUNTY OF BAY**

**BEFORE ME**, the undersigned authority, this day personally appeared Kevin E. Wood, who first being duly sworn, says that he has read the foregoing VERIFIED COMPLAINT and has personal knowledge of the facts and matters therein set forth and alleged and that each and all of these facts and matters are true and correct under penalty of perjury and who did take an oath.

**SWORN TO AND SUBSCRIBED BEFORE ME** this 26th day of November 2003 and Plaintiff has produced his Florida driver's license, #W300-505-54-251-0, as identification:



(Printed Name of Notary Public & Stamp Above)         Signature of Notary Public

My Commission Expires: _____

**15**